PHILLIP A. TALBERT
United States Attorney
JAMES R. CONOLLY
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. 2:17-CR-155-TLN |
|---|---|
| Plaintiff, | |
| v. | UNITED STATES' SENTENCING MEMORANDUM |
| PABLO VARGAS, | |
| Defendant. | DATE: February 7, 2022<br>TIME: 9:30 a.m.<br>COURT: Hon. Troy L. Nunley |

At the upcoming sentencing for defendant Pablo Vargas, the United States will recommend that the Court sentence him to the low-end of the guideline range, as determined by the Court, but which the United States estimates to be 135 months.  The United States also supports the PSR's recommendation for a five-year term of supervised release.

## I.   DISCUSSION

A.   **Sentencing Recommendations**

1.   **Imprisonment:  135 months**

The United States recommends that the Court impose a sentence at the low-end of the guideline range.  *See* Plea Agreement, Section III.B (ECF No. 170) at 4.  The PSR calculated the low-end of the guideline range to be 168 months, without the benefit of the safety valve's two-level reduction. PSR ¶ 79.  Recently, however, Vargas and his attorney spoke with the undersigned attorney for the United States and, from the government's point of view, Mr. Vargas has now met the requirements of

United Stated Sentencing Guidelines (U.S.S.G.) Section 5C1.2(a)(5). As a result—and per its obligations under the Plea Agreement—the government recommends that Vargas receive the two-level reduction included in U.S.SG. § 2D1.1(b)(17), if the Court finds that he is eligible under the remaining criteria of U.S.S.G. § 5C1.2(a)(1)-(4). With the application of safety valve relief, the government estimates the resulting guideline range to be 135-168 months.

      A sentence at the low end of this range is sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of 18 U.S.C. § 3553(a). The defendant is responsible for moving a significant amount of drugs during the deals in this case. The evidence indicates he was doing it for profit and little else. Contrary to his contention that he sold the drugs as a favor to his cousin, Luis Nunez, the evidence shows that Vargas was well-entrenched in the drug world already. Indeed, Nunez referred the FBI's Confidential Source (CS) to Vargas because Nunez knew that Vargas could supply the drugs the CS was seeking.[1] PSR ¶ 9. When Nunez first put the CS on the telephone with Vargas, Vargas did not react with surprise or confusion as to why he had been called about drugs. *Id*. Instead, he spoke with the CS about future drug buys, about potential quantities and prices, and about possible discounts if the CS was willing to drive to Indio to collect the drugs. *Id*. From that point forward, the CS dealt with Vargas exclusively. In the negotiations with the CS that followed, Vargas discussed getting significant amounts of cocaine and methamphetamine from Mexico. *Id*. ¶ 9-12. Vargas told the CS that he had a "boss" with whom he consulted on drug prices and who supplied Vargas with drugs to sell. *Id*. ¶ 10-12. Ultimately, Vargas sold the CS 104 grams of cocaine and planned to sell the CS 15 pounds of methamphetamine, at the time Vargas was arrested. *Id*. ¶ 12. These are not quantities sold by first-time distributors. The drug quantities involved and the sizable amount of cash found at Vargas' house indicate long-term work distributing drugs. *Id*. ¶ 16. Had Vargas lived a life free from drugs until that point, there is no reason he would be so fluent in the language of distribution and no reason Nunez would have called him in the first place. Vargas' contention that this case results from a one-time mistake, borne of naivety and a misplaced sense of familial obligation, is not persuasive.

      The government acknowledges that Vargas comes to this case with no recorded criminal history,

---

[1] There is no indication in the evidence that Nunez was in any kind of legal trouble or that Vargas' selling drugs to the CS was motivated by family pressure.

and no known history of violence. PSR ¶ 37. This light history allows him the benefit of eligibility for the safety valve's two-level reduction to his guideline range, which is appropriate. His pleading guilty has reduced his offense level by a further three points.

The remainder of the sentencing reductions for which he argues, however, (despite the fact that none of them appear in the plea agreement's estimated guidelines calculations, to which Vargas agreed) are not applicable. Def's Sentencing Memorandum (ECF No. 183) at 2-3. Given his role as the primary drug supplier in this case—coordinating the buys, relaying prices, taking payment, etc.—there is no room for Vargas to argue that he played a minor role. He was dialed into the process completely. As for the four-level "Fast Track" reduction, the Sentencing Guidelines do not provide for application of a Fast Track resolution in drug distribution cases like this and certainly not when the defendant has pleaded guilty nearly four years after indictment.[2] Vargas has not offered any authority suggesting otherwise. Finally, the government has never heard of a two-level reduction for a "Covid Downward Departure." There is no explanation as to what that means or why it would apply to Vargas. Moreover, Vargas did not submit any objections to the PSR to explain why the foregoing sentencing reductions should apply. Rightly, the PSR does not include them. Vargas has fulfilled the fifth safety valve requirement, but he did so relatively recently, so the government does not object to its application at sentencing, even though Vargas filed no objection to argue for its consideration.

A 135-month term of imprisonment is an appropriate punishment for the defendant's conduct in this case. It reflects the seriousness of the instant offense and promotes respect for the law by sending a clear message that participating in large scale drug distribution will not be tolerated. In that way, it affords adequate deterrence, both specific and general.

### 2.   **Supervised release: Five years**

The government supports the PSR's recommendation of a five-year supervised release term. Supervised release will provide Vargas with the resources to assist his reintegration into society once he is released from prison.

---

[2] Moreover, for the Fast Track reduction to apply in any case, the government has to file a motion asking the Court to consider it. There is no such motion here.

3. **Fine**

The Probation Office has determined that the defendant does not have the ability to pay a fine, assuming the Court issues an order of forfeiture. *See* PSR ¶ 64. The United States has no evidence to dispute this determination and therefore does not argue for the imposition of a fine. As Vargas has pleaded to a felony count, however, there will be a $100 special assessment.

B. **Dismissal of Counts**

At the conclusion of the hearing, the government will move the Court to dismiss without prejudice the remaining count against Vargas, Count Two, of the pending indictment. Plea Agreement, Section III.A. at 4.

## II.   CONCLUSION

For the reasons given above, the government respectfully recommends that the Court impose a sentence including a 135-month term of imprisonment; a five-year term of supervised release; and a $100 special assessment.

Dated: February 7, 2022

PHILLIP A. TALBERT
United States Attorney

/s/ *James R. Conolly*
JAMES R. CONOLLY
Assistant United States Attorney